UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| KEVIN ELLER, | ) | |
| | ) | |
| *Plaintiff*, | ) | |
| | ) | |
| vs. | ) | No. 1:19-cv-01545-JMS-TAB |
| | ) | |
| PETROV STOYAN and BENEFIT TRUCKING INC., | ) ) | |
| | ) | |
| *Defendants*. | ) | |

## ORDER

Plaintiff Kevin Eller was involved in a traffic collision with Defendant Petrov Stoyan. Mr. Eller filed this lawsuit against Mr. Stoyan and Mr. Stoyan's employer, Benefit Trucking Inc. ("Benefit"), seeking damages for injuries he alleges he suffered as a result of the collision. Defendants have filed a Motion for Partial Summary Judgment, [Filing No. 60], which is now ripe for the Court's decision.

## I.
### STANDARD OF REVIEW

A motion for summary judgment asks the Court to find that a trial is unnecessary because there is no genuine dispute as to any material fact and, instead, the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). As the current version of Rule 56 makes clear, whether a party asserts that a fact is undisputed or genuinely disputed, the party must support the asserted fact by citing to particular parts of the record, including depositions, documents, or affidavits. Fed. R. Civ. P. 56(c)(1)(A). A party can also support a fact by showing that the materials cited do not establish the absence or presence of a genuine dispute or that the adverse party cannot produce admissible evidence to support the fact. Fed. R. Civ. P.

1

56(c)(1)(B). Affidavits or declarations must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on matters stated. Fed. R. Civ. P. 56(c)(4). Failure to properly support a fact in opposition to a movant's factual assertion can result in the movant's fact being considered undisputed, and potentially in the grant of summary judgment. Fed. R. Civ. P. 56(e).

In deciding a motion for summary judgment, the Court need only consider disputed facts that are material to the decision. A disputed fact is material if it might affect the outcome of the suit under the governing law. *Williams v. Brooks*, 809 F.3d 936, 941-42 (7th Cir. 2016). In other words, while there may be facts that are in dispute, summary judgment is appropriate if those facts are not outcome-determinative. *Montgomery v. Am. Airlines Inc.*, 626 F.3d 382, 389 (7th Cir. 2010). Fact disputes that are irrelevant to the legal question will not be considered. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

On summary judgment, a party must show the Court what evidence it has that would convince a trier of fact to accept its version of the events. *Gekas v. Vasilades*, 814 F.3d 890, 896 (7th Cir. 2016). The moving party is entitled to summary judgment if no reasonable fact-finder could return a verdict for the non-moving party. *Nelson v. Miller*, 570 F.3d 868, 875 (7th Cir. 2009). The Court views the record in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *Skiba v. Ill. Cent. R.R. Co.*, 884 F.3d 708, 717 (7th Cir. 2018). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder. *Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014). The Court need only consider the cited materials, Fed. R. Civ. P. 56(c)(3), and the Seventh Circuit Court of Appeals has repeatedly assured the district courts that they are not required to "scour every inch of the record" for evidence that is potentially relevant to the

summary judgment motion before them. *Grant v. Trs. of Ind. Univ.,* 870 F.3d 562, 573-74 (7th Cir. 2017). Any doubt as to the existence of a genuine issue for trial is resolved against the moving party. *Ponsetti v. GE Pension Plan*, 614 F.3d 684, 691 (7th Cir. 2010).

## II.
### STATEMENT OF FACTS

The following factual background is set forth pursuant to the standard detailed above. The facts stated are not necessarily objectively true, but as the summary judgment standard requires, the undisputed facts and the disputed evidence are presented in the light most favorable to "the party against whom the motion under consideration is made." *Premcor USA, Inc. v. Am. Home Assurance Co.*, 400 F.3d 523, 526-27 (7th Cir. 2005).

**A.  The Collision**

On Sunday February 18, 2018, Mr. Eller drove his pickup truck to mile marker 129 on Interstate 74 where his other vehicle had broken down. [Filing No. 51-2 at 14.] He parked his pickup truck such that the front of the pickup truck faced the front of the disabled vehicle so that he could attempt to jump-start the disabled vehicle. [Filing No. 62-1 at 15.] Mr. Eller's stepdaughter's boyfriend got out of the truck to open the hood and begin jumpstarting the disabled vehicle. [Filing No. 62-1 at 15-17.] Mr. Eller turned on the hazard lights of his pickup truck, but he was unable to do so for the disabled vehicle because the battery was dead. [Filing No. 61-2 at 15.]

As Mr. Eller was sitting on the driver's side of his pickup truck, a semitruck struck the front of the pickup truck head-on. [filing No. 62-1 at 18.] The cab and trailer of the semitruck went up and over the pickup truck, leaving tire tracks on top of the pickup truck and dragging the pickup truck roughly fifteen feet. [Filing No. 62-1 at 18-19.] The pickup truck's frame was bent

and the airbags deployed. [Filing No. 62-1 at 18-19.] Mr. Eller's stepdaughter's boyfriend helped Mr. Eller out of the vehicle, and Mr. Eller called 9-1-1. [Filing No. 62-1 at 18.]

Police arrived first, and an ambulance arrived five to ten minutes later. [Filing No. 62-1 at 21.] Mr. Eller testified that he remembers being awake, standing, and describing what happened, but he does not recall whether he described any injuries to the police officer. When the EMS arrived, they checked Mr. Eller's blood pressure and gave him an IV. [Filing No. 62-1 at 23.] Mr. Eller testified that he was "in shock" and "the adrenaline was overwhelming." [Filing No. 62-1 at 19.] When the EMTs asked him about his injuries, he told them he was suffering from head and side pain. [Filing No. 62-1 at 23.] However, he did not know his shoulder was injured at that time and he did not convey that he was suffering any shoulder pain. [Filing No. 62-1 at 24.]

The ambulance transported Mr. Eller to the emergency department of Decatur County Hospital where he informed the doctor that he was suffering from head pain and neck pain, but again did not notice or feel any shoulder pain at that time. [Filing No. 62-1 at 26.] Ultimately, the ER doctor determined that Mr. Eller did not need to be admitted and Mr. Eller went home with instructions to follow up with his primary care physician if any pain or injuries persisted. [Filing No. 62-1 at 27.]

### B. Mr. Eller's Medical Treatment

Mr. Eller testified that he discovered his shoulder was injured "a day or so" after the collision, and a few days after the collision—on "Monday or Tuesday"—Mr. Eller followed up with his primary care physician, Dr. Gryspeerdt. [Filing No. 62-1 at 24; Filing No. 62-1 at 31.] At that time, he told Dr. Gryspeerdt that he had started to suffer right shoulder pain and continued to have a headache, but his other injuries had subsided. [Filing No. 62-1 at 32.] Mr.

Eller testified that he told his doctor that his shoulder pain was an eight on a one-to-ten pain scale. [Filing No. 62-1 at 33.] Additionally, Mr. Eller was unable to raise his right arm. [Filing No. 62-1 at 33.] Mr. Eller testified that Dr. Gryspeerdt performed the normal exams—"whatever you would do for a shoulder exam"—and Dr. Gryspeerdt's initial diagnosis was a torn bicep. [Filing No. 62-1 at 33-34.] Mr. Eller testified that he does not remember what course of treatment he was prescribed at that time, including whether he was prescribed any medications. [Filing No. 62-1 at 34.] However, Mr. Eller testified that if he was prescribed a painkiller, he wouldn't have filled the prescription. [Filing No. 62-1 at 35.]

After Mr. Eller's MRI results revealed a torn-rotator cuff, he went to see Dr. Argo, an orthopedic surgeon. [Filing No. 62-1 at 36.] Dr. Argo initially prescribed physical therapy, and Mr. Eller went to twelve sessions over a few months. [Filing No. 62-1 at 38.] After those sessions, Mr. Eller was still suffering from pain at "around seven or eight" on the one-to-ten pain scale, and Mr. Eller and his physical therapist agreed that physical therapy was not helping. [Filing No. 62-1 at 38-39.] Mr. Eller returned to Dr. Argo, and they agreed that surgery was the appropriate next step. [Filing No. 62-1 at 40.] Mr. Eller has not yet scheduled that surgery due to financial restrictions. [Filing No. 62-1 at 40.]

Dr. Argo stated that he has not yet "seen the actual tissue inside the shoulder," but believes that "without surgical intervention, [Mr. Eller's] prognosis is poor, that the use of his arm will diminish over a period of time and he will get to the point where he will not be able to raise his arm in a normal fashion." [Filing No. 64-1 at 1.] Dr. Argo added that if Mr. Eller does undergo surgery, his recovery process will last "roughly nine months to a year," and Mr. Eller

5

will miss "anywhere from six months to a year" of work.[1]  [Filing No. 64-1 at 2.]  Dr. Argo also opined that Mr. Eller stated to him that Mr. Eller had no symptoms prior to the collision, but that Dr. Argo has "no way of knowing whether or not [Mr. Eller's] injury occurred at [the time of the accident] other than by [Mr. Eller's] report."  [Filing No. 64-1 at 2.]

Currently, Mr. Eller's shoulder still causes him pain.  He testified: "I can't sleep a full night, I can't do anything above my head. . . .  I can't golf, I can't crossbow hunt, I can't fish, I can't mow the yard, I can't start the lawnmower, I can't help the wife paint the ceilings.  Anything that has to do with strength above my head, I don't have.  I can't play with my grandkids, I can't hold them."  [Filing No. 62-1 at 41-42.]  Mr. Eller testified that his injury is worsening, and he believes that although he is still working, eventually his injury will cost him his job.  [Filing No. 62-1 at 42.]

### C. The Lawsuit

Mr. Eller filed this lawsuit on April 18, 2019 seeking damages for severe and permanent injuries, medical expenses, mental and physical pain, loss of earnings, loss of earnings capacity, disfigurement and deformity, humiliation, and mental anguish.  [Filing No. 1; Filing No. 7 at 3.]  On March 23, 2020, Defendants filed their Motion for Partial Summary Judgment requesting that the Court grant partial summary judgment on Mr. Eller's claims "pertaining to injury damages related to the Plaintiff's alleged shoulder injury."  [Filing No. 60 at 1.]  That motion has been fully briefed and is ripe for the Court's decision.

---

[1] Mr. Eller works as a telephone, internet, and television service installer for Cincinnati Bell. [Filing No. 62-1 at 6.]

### III.
#### DISCUSSION

In support of their motion, Defendants argue that Mr. Eller lacks "causation evidence as to the cause of his alleged shoulder injuries," and therefore they are entitled to summary judgment. [Filing No. 61 at 2.] They argue that Mr. Eller does not have expert medical evidence to prove that the collision caused his injuries. [Filing No. 61 at 6.] Specifically, Defendants maintain that Mr. Eller's alleged injuries are subjective, meaning Mr. Eller perceived and experienced the injuries and reported them to his doctor, but the injuries are not directly observable by the doctor. [Filing No. 61 at 6.] Defendants argue that "[b]ecause the injury complained of by [Mr. Eller] is subjective in nature, the testimony of Mr. Eller is insufficient to prove causation without expert medical testimony." [Filing No. 61 at 7 (citing *Daub v. Daub*, 629 N.E.2d 873, 877 (Ind. Ct. App. 1994)).] Defendants emphasize that Dr. Argo—Mr. Eller's orthopedic surgeon and sole disclosed expert—opined that "I have no way of knowing whether or not [Mr. Eller's rotator cuff] injury occurred at [the time of the accident] other than by [Mr. Eller's] report." [Filing No. 61 at 8 (quoting Filing No. 64-1 at 2).] Accordingly, Defendants argue, Mr. Eller "cannot establish the causal link necessary to survive" their mfotion. [Filing No. 61 at 9.]

Mr. Eller responds that summary judgment is not appropriate because Defendants "fail to meet their burden in establishing that there is no genuine issue of material fact." [Filing No. 70 at 5.] Mr. Eller contends that his injury—a torn rotator cuff—is an objective injury because it "can be discovered by reproducible exams or diagnostic studies that are independent of what the patient tells the doctor." [Filing No. 70 at 7.] Mr. Eller argues that he "did not suffer nebulous shoulder pain after a fender-bender." [Filing No. 70 at 7.] Instead, he argues, he suffered "severe shoulder pain the day after being hit by a semi-truck," and had no prior injury history

with respect to his right shoulder or rotator cuff. [Filing No. 70 at 7.] He further argues that his MRI revealed a torn rotator cuff, and that the injury is therefore an objective one. [Filing No. 70 at 8.]

Defendants reply that unlike "a broken bone injury where mere temporal proximity between the broken bone and a vehicle collision appropriately establishes causation, . . . a torn rotator cuff is a subjective injury beyond the comprehension of an ordinary man," and is one that can be caused by factors unrelated to the collision such as "[r]epetitive motions and degenerative changes." [Filing No. 73 at 3.] Defendants argue that "Dr. Argo cannot say to a reasonable degree of medical certainty that the automobile collision caused [Mr. Eller's] injuries." [Filing No. 73 at 4.] Defendants maintain that when Mr. Eller was presented "with the lack of causation proof, [he] failed to proffer an expert medical opinion establishing the causation of [his] shoulder injury." [Filing No. 73 at 4.] They conclude that "[b]ecause the injury complained of by [Mr. Eller] is subjective in nature, the testimony of [Mr. Eller] is insufficient to prove causation without expert medical testimony." [Filing No. 73 at 6.]

"Negligence claims have three elements: (1) a duty owed by the defendant to the plaintiff, (2) a breach of that duty and (3) injury to the plaintiff proximately caused by the defendant's breach." *Hayden v. Franciscan All., Inc.*, 131 N.E.3d 685, 693 (Ind. Ct. App. 2019). Relevant here is the third element, proximate cause: "the requirement of a reasonable connection between a defendant's conduct and the damages which a plaintiff has suffered. This element requires, at a minimum, causation in fact—that is, that the harm would not have occurred "but for" the defendants' conduct." *Daub*, 629 N.E.2d at 877 (internal citations omitted). "The question of proximate cause is one usually left to the jury." *Rhodes v. Wright*, 805 N.E.2d 382, 388 (Ind. 2004).

In order for a plaintiff to carry his burden of proof with respect to causation, he "must present evidence of probative value based on facts, or inferences to be drawn from the facts, establishing both that the wrongful act was the cause in fact of the occurrence and that the occurrence was the cause in fact of [his] injury." *Daub*, 629 N.E.2d at 877. "The defendant's act need not be the sole cause of the plaintiff's injuries. Many causes may produce the injurious result. The essential question is whether the defendant's wrongful act is one of the proximate causes rather than a remote cause." *Smith v. Beaty*, 639 N.E.2d 1029, 1034 (Ind. Ct. App. 1994) (citing *Lucas v. Dorsey Corp.*, 609 N.E.2d 1191, 1199, (Ind. Ct. App. 1993)).

Relevant to causation, Indiana law recognizes a distinction between objective injuries and subjective injuries.  "An injury is objective when it can be discovered through a reproducible physical exam or diagnostic studies that are independent of the patient telling you what they feel or where they feel it.  A subjective complaint or injury is perceived or experienced by a patient and reported to the patient's doctor but is not directly observable by the doctor." *Topp v. Leffers*, 838 N.E.2d 1027, 1033 (Ind. Ct. App. 2005) (internal quotations and citations omitted). "When an injury is objective in nature, the plaintiff is competent to testify as to the injury and such testimony may be sufficient for the jury to render a verdict without expert medical testimony." *Daub*, 629 N.E.2d at 877 (internal citations omitted).  But "[w]hen the issue of cause is not within the understanding of a lay person, testimony of an expert witness on the issue is necessary." *Id.* at 878.  In other words, "where a plaintiff's injuries are subjective in nature, expert medical testimony is required to prove causation." *Harris v. Jones*, 143 N.E.3d 1012, 1017 (Ind. Ct. App. 2020).

The motion in this case turns on whether Mr. Eller's shoulder injury is subjective or objective. That is, the issue is whether Mr. Eller's testimony as to causation is "sufficient for the jury to render a verdict without expert medical testimony." *Daub*, 629 N.E.2d at 877.

Here, Mr. Eller's torn rotator cuff is an objective injury. It was directly observable to his physician and could have been discovered through reproducible physical exams and diagnostic studies. Indeed, the injury was discovered by an examination of MRI results. Moreover, it is of no consequence that Dr. Argo has "no way of knowing whether or not [Mr. Eller's] injury occurred at [the time of the accident]." *See Beaty*, 639 N.E.2d at 1034 ("[W]hile [the plaintiff's] doctor] was unable to say to a reasonable degree of certainty which event caused [the plaintiff's] injuries, [the plaintiff] was able to testify that he felt severe pain only *after* the impact of the semi."). The injury was observable—and observed—by Mr. Eller's physician and it is therefore an objective injury.

Additionally, the causal connection "is not so complex that a layperson would be unable to comprehend it without expert testimony." *Foddrill v. Crane*, 894 N.E.2d 1070, 1078 (Ind. Ct. App. 2008) (holding that where there was no evidence that the plaintiff suffered from any preexisting neck injuries, the automobile collision was sufficiently forceful so as to cause the plaintiff's head to hit the roof of her vehicle, and she almost immediately began feeling stiffness and pain in her neck after the collision, expert testimony was not "required to show a causal relationship between the accident and [the plaintiff's] injuries under the circumstances of the case"). Mr. Eller was in an automobile collision in which a semitruck hit his pickup truck head-on and ran over the pickup truck, leaving tire tracks on its roof and dragging it several feet. The evidence in this non-complex negligence claim is such that a layperson could readily determine whether the collision was *a* cause of Mr. Eller's injuries. *See Martin v. Ramos*, 120 N.E.3d 244,

252 (Ind. Ct. App. 2019) (holding in a case involving an automobile accident resulting in head neck and shoulder injuries that "the evidence of record in this non-complex claim for temporary injury is such that a layperson could readily understand whether or not the collision was *a* cause of injury to [plaintiff]" (emphasis in original)); Beaty, 639 N.E.2d at 1034 (holding in a case involving broken ribs from an automobile collision with a semitruck that "a lay person would be competent to draw inferences from these facts and determine that [defendant's] conduct was *a* cause of [plaintiff's] injuries. [Plaintiff's doctor's] inability to determine whether the rolling of the van or the impact of the semi caused [plaintiff's] injuries was not fatal to [plaintiff's] case" (emphasis in original)).

Furthermore, the Court is not swayed by the fact that Mr. Eller did not complain of shoulder pain immediately after the accident. [*See* Filing No. 73 at 6.] Mr. Eller testified that he was "in shock" and "the adrenaline was overwhelming." [Filing No. 62-1 at 19.] Additionally, he testified that he discovered his shoulder was injured "[a] day or so later." [Filing No. 62-1 at 24.] Though a jury may be unconvinced in the absence of expert testimony that Mr. Eller's injuries were caused by the collision, that is a quintessential genuine issue of material fact for the jury to decide. Indiana law does not *require* expert medical testimony for an objective injury like Mr. Eller's, and therefore summary judgment is inappropriate.

## IV.
### CONCLUSION

For the reasons set forth above, Defendants' Motion for Partial Summary Judgment, [60], is **DENIED**.

Date: 7/27/2020

Hon. Jane Magnus-Stinson, Chief Judge
United States District Court
Southern District of Indiana

11

**Distribution via ECF only to all counsel of record.**